UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARITA P.[1],

                      Plaintiff,

v.                                                 CASE # 20-cv-00131

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | ELIZABETH HAUNGS, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | BRITTANY J. GIGLIOTTI, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.     RELEVANT BACKGROUND

    A.     **Factual Background**

Plaintiff was born on August 5, 1970 and has at least a high school education. (Tr. 352, 345). Generally, plaintiff's alleged disability consists of anxiety, depression, arm pain, fibromyalgia, abnormal mass in breast, bipolar disorder, posttraumatic stress disorder (PTSD), bulging discs in the neck, knee problems, back problems, sleep apnea, and carpal tunnel syndrome. (Tr. 344). Her alleged onset date of disability is August 1, 2016 and her date last insured is December 31, 2020. (Tr. 144, 352).

    B.     **Procedural History**

On September 9, 2016, plaintiff protectively applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 316, 323). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 14, 2018, plaintiff virtually appeared before the ALJ Nathan Brown who issued a written decision on December 26, 2018, finding plaintiff not disabled under the Social Security Act. (Tr.138-158, 190-227). On December 5, 2019, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). Thereafter, plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in his decision, ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.  The claimant has not engaged in substantial gainful activity since August 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3.  The claimant has the following severe impairments: fibrocystic changes and scarring of the breasts, type II diabetes, cholelithiasis, carpal tunnel syndrome of both wrists, paresthesia, obstructive sleep apnea, fibromyalgia, migraine headaches, depressive disorder, bipolar disorder, posttraumatic stress disorder (PTSD), and borderline personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to lift/carry and push/pull 20 pounds occasionally, 10 pounds frequently. She is able to sit six hours in an eight-hour workday. She is able to stand or walk six hours in an eight-hour workday. She is able to operate hand controls and handle items bilaterally frequently. She is able to climb ramps and stairs, balance, kneel, crouch, and crawl occasionally. She should never climb ladders, ropes, or scaffolds. The claimant is able to stoop frequently. She should never work at unprotected heights. She is able to work with moving mechanical parts and operate motor vehicle occasionally. She is limited to occasional exposure to extreme cold and vibration. She is limited to moderate noise. She should have no exposure to bright lighting, such as stage lighting or headlights; however, normal office or home lighting is acceptable. The claimant is limited to low stress environment defined as no fast-paced production or strict time quota requirements, occasional change in a routine work setting, and no supervisory responsibility. She is limited to occasional interaction with supervisors, co-workers, and the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 5, 1970, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2016, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 138-154).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff argues the Appeals Council improperly rejected relevant evidence. (Dkt. No. 7 at 13 [Pl.'s Mem. of Law]). Plaintiff also asserts the ALJ's RFC was impermissibly based on a lay interpretation of the raw medical evidence and therefore not supported by substantial evidence. (Dkt. No. 7 at 15).

### B.   Defendant's Arguments

In response, defendant argues substantial evidence supports the ALJ's decision despite the additional evidence submitted to the Appeals Council. (Dkt. No. 8 at 7 [Def.'s Mem. of Law]). Defendant also argues substantial evidence supports the ALJ's determination that the plaintiff could perform a range of light work. (Dkt. No. 8 at 11).

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial

evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV.   **ANALYSIS**

   **A.  Evidence Submitted to the Appeals Council**

Plaintiff argues that remand is required because the AC concluded that a community assessment was not relevant to the period at issue. (Dkt. No. 7 at 14). Plaintiff submitted over 100 pages of new evidence to the AC after the ALJ's unfavorable decision, but singles out an assessment from nurse Michelle Brady, RN, in March 2019, and another assessment from occupational therapist Amanda Ziomek, OTR/L, in April 2019, as being improperly rejected. (Tr. 11-33, 66-71).

Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of a Request for Review. *Hightower v. Colvin*, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013) (citing 20 C.F.R. §§ 416.1470(b) and 416.1476(b)(1)). The Appeals Council must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision. *Id.*

Evidence is new if it is not cumulative of what is already in the record. *Simon v. Berryhill, No. 1:16-cv-04088(FB), 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017)*. It is material if it is

relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently. *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1990)).

Indeed, medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. *Pulos v. Comm'r of Soc. Sec.*, No. 1:18-CV-00248 EAW, 2018 WL 5801551, at *6 (W.D.N.Y. Nov. 5, 2018) (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). This is because the evidence "may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Id.* (quoting *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order)). But the Appeals Council does not have to consider evidence that does not provide additional information about the claimant's functioning during the relevant time period and instead relates to his or her functioning at some later point in time. *Id.* (citation omitted).

As stated by the AC, the assessments from NP Brady and Therapist Ziomek do not relate to the period on or before the ALJ's decision. In fact, there was no treatment by either provider before the ALJ's decision but rather each assessment was after a single evaluation of the plaintiff three and four months later. (Tr. 11-33, 69-71). The assessments did not reference any earlier dates nor describe plaintiff's condition prior to the time of the hearing. *See Perez*, 77 F.3d at 47; *see also Zimpfer v. Comm'r of Soc. Sec.*, No. 1:18-CV-1512-DB, 2020 WL 32938, at *4 (W.D.N.Y. Jan. 2, 2020) (affirming Appeals Council's refusal to consider evidence that postdated the ALJ's decision because the evidence "did not describe Plaintiff's condition prior to the time of the hearing, and thus does not contradict the ALJ's decision"). Rather, the assessments evaluated plaintiff's level

of functioning as of March 27, 2019 and April 10, 2019. (Tr. 69). *See* 20 C.F.R. § 416.1470(a)(5), (b) (permitting review of an ALJ's decision based on new evidence submitted to the AC only if, *inter alia*, the evidence "relates to the period on or before the date of the [ALJ's] hearing decision").

"If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). However, in *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996), the Second Circuit concluded that "[n]ew evidence submitted to the Appeals Council becomes part of the administrative record for purposes of judicial review when the Council denies review." Because the Appeals Council denied review here, this Court's review focuses on the ALJ's decision, *Lesterhuis*, 805 F.3d at 87; but in light of *Perez*, this Court's review also includes the new evidence submitted to the Appeals Council. *See id.*; *Perez*, 77 F.3d at 45.

The assessments by nurse Brady and therapist Ziomek would not have undermined the ALJ's decision. Nurse Brady and therapist Ziomek are "other" sources, and their assessments deserve no special deference. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). As discussed above, they did not have a lengthy treating relationship, but rather only evaluated the plaintiff once. *See* 20 C.F.R. §§ 404.1427(c)(2)(i), 416.927(c)(2)(i) (length and frequency of treatment are factors to consider). There is no reference to longitudinal treatment or review of previous medical records. In sum, there is no reasonable possibility that the initial assessments from nurse Brady and therapist Ziomek, drafted subsequent to the ALJ's decision, would cause the ALJ to change his decision.

### B. Substantial Evidence Supports the RFC

Plaintiff next contends the ALJ's RFC was based on lay interpretation of raw medical evidence because it did not correlate to any medical opinion of record and therefore is not based on substantial evidence. (Dkt. No. 7 at 15). Plaintiff also extensively cites case law related to instances of an ALJ according only partial, some or limited weight to opinion evidence. (Dkt. No. 7 at 16-17). Plaintiff neglects to discuss the ALJ did give significant weigh to the opinion of State agency psychological consultant H. Tzetzo, M.D. (Tr. 147). In December 2016 Dr. Tzetzo opined plaintiff would have moderate limitations maintaining concentration and attention for extended periods, carrying out detailed instructions, interacting appropriately with the general public, or getting along with coworkers; and plaintiff was not significantly limited in her ability to carry out very short and simple instructions, perform activities within a schedule, make simple work-related decisions, ask simple questions or be aware of normal hazards. (Tr. 239-40). The Second Circuit has recognized that an opinion of a non-examining source can constitute substantial evidence in support of an ALJ's determination. *See Diaz v. Shalala*, 59 F.3d 59 F.3d 309, 313 n. 5 (2d Cir. 1995); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). ALJ Brown accordingly limited plaintiff to unskilled work in a low stress environment (i.e., no fast-paced production or strict time quota requirements) with only occasional changes in a routine work setting, no supervisory responsibility, and only occasional interaction with supervisors, co-workers, and the public. (Tr. 147). The ALJ appropriately tied his findings to substantial evidence and reasonably explained Dr. Tzetzo's opinion was supported by mental status examination findings and plaintiff's reports of her daily activities. (Tr. 147-52).

Furthermore, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion

may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). When an ALJ adopts only parts of a medical opinion, he must explain why the other parts were rejected, as the ALJ did here. *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("[A]n ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portion.").

In addition to relying on the State agency psychologist's opinion, the ALJ based the mental portion of RFC on the overall record, including other medical opinions in part. The ALJ observed plaintiff's reports of disabling limitations were inconsistent with her high functioning daily activities and with her part-time work activity two days per week. (Tr. 148-49). The ALJ additionally noted the record included no observations of any significant cognitive deficits or plaintiff's complaints of having cognitive deficits (Tr. 151; *see* Tr. 451, 476, 621-22, 642-43, 648-49, 663-64, 671-72, 679-80, 695-96, 704-05, 904, 969, 989). Rather, the plaintiff's status examinations typically showed logical thought process, fair insight and judgment, and grossly intact attention, memory, and concentration (Tr. 151; *see* Tr. 451, 476, 621-22, 642-43, 648-49, 663-64, 671-72, 679-80, 695-96, 704-05, 904, 969, 989).

The ALJ also considered the November 2016 findings of consultative examiner Dr. Ippolito, namely, that plaintiff was able to follow and understand simple directions and instructions, perform both simple and complex tasks independently, learn new tasks, and make appropriate decisions with no evidence of limitations. (Tr. 151, 440-43). The ALJ described Dr.

10

Ippolito's opinion as conflicting with her examination findings. (Tr. 151). For instance, the ALJ could not reconcile Dr. Ippolito's opinion of "marked limitations" when plaintiff could "appropriately deal with stress"; the ALJ also could not square Dr. Ippolito's opinion that plaintiff had "moderate limitations" with her statements that plaintiff was able to maintain attention and concentration, maintain a regular schedule, and relate adequately with others with moderate limitations. (Tr. 151, 440-43). As the ALJ reasonably concluded, Dr. Ippolito's opinion was vague and contradictory, warranting only little weight. (Tr. 151, 440-43).

The ALJ next discussed the October 2018 opinion of treating psychologist Richard Wolin, M.D., properly stating it was afforded little weight because no limitations were provided. (Tr. 152). Dr. Wolin summarily found plaintiff had a decreased ability to work and was disabled, and ALJ Brown correctly concluded this was not a medical opinion but an administrative finding on an issue reserved to the Commissioner. (Tr. 152, 1054). 20 C.F.R. § 404.1527(d)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are never entitled to any special significance).

Similarly, the ALJ considered the entire record when formulating the physical portion of the RFC. The ALJ discussed plaintiff's fibromyalgia treatment history, self-reports that medication was "quite helpful" and plaintiff's disclosure in July 2018 that she was no longer taking medication despite ongoing fibromyalgia pain complaints. (Tr. 148-50, 416-17, 717, 734). An ALJ may consider whether a claimant has complied with prescribed treatment when assessing allegations of disabling symptoms. *Cf. Turner v. Berryhill*, No. 1:16-CV-00405 (MAT), 2017 WL 4285902, at *3 (W.D.N.Y. Sept. 27, 2017). ALJ Brown considered plaintiff's history of carpal tunnel syndrome, diabetes, sleep apnea, fibrocystic breast changes, and migraines, and asserted treatment notes show generally normal physical findings, aside from slightly reduced strength in the left

upper extremity on occasion. (Tr. 144-49). However, as the ALJ noted, there was no evidence of left carpal tunnel syndrome or sensory/motor neuropathy in either upper extremity. (Tr. 149). The ALJ observed that throughout the record plaintiff had full (5/5) strength in the lower extremities with an intact and normal gait. (Tr. 149, citing Tr. 416-17, 477, 969). The ALJ cited that although plaintiff was unable to heel walk, had moderate difficulty with toe walking, and was able to squat only 25 percent during an examination with Dr. Liu, she did not require an assistive device, needed no help getting on and off the examination table, and was able to rise from a chair without difficulty. (Tr. 150, 436). The ALJ explained that a sleep study showed only mild sleep apnea and treatment notes reported she was non-compliant with use of her CPAP machine. (Tr. 145, 423, 699). Although plaintiff alleged disabling headaches, ALJ Brown found the record did not corroborate frequent migraines and the plaintiff rarely complained to providers of headaches. (Tr. 150). The ALJ considered plaintiff underwent a lumpectomy for a benign lump in her breast and that a mammogram in April 2018 demonstrated no mammographic evidence of malignancy. (Tr. 149, citing Tr. 587). Lastly, the ALJ referenced the recent diagnosis of type II diabetes in August 2018, but treatment was medication and counseling for weight loss; there was no evidence of emergency department visits, hospital admissions, or ketoacidosis related to her diabetes. (Tr. 149, citing Tr. 946-50).

In addition to the extensive records, the ALJ also properly considered the opinion evidence while formulating the physical RFC. He accorded little weight to the September 2017 opinion of breast specialist Helen Cappuccino, M.D., that plaintiff needed additional time off work after a breast lumpectomy. (Tr. 150, citing Tr. 583). The ALJ reasonably explained that he afforded little weight to this opinion because it was a temporary restriction related to breast pain, and it was based

on plaintiff's subjective complaints and ability to do past work. (Tr. 150). Further, the ALJ asserts Dr. Cappuccino did not provide any functional limitations. (Tr. 150).

Next, the ALJ considered the November 2016 opinion from consultative examiner Dr. Liu that plaintiff had moderate limitations for prolonged walking, bending, kneeling, and overhead reaching. (Tr. 150, citing Tr. 438). The ALJ explained that he afforded little weight to the opinion because it was vague and Dr. Liu did not provide specific limitations. (Tr. 150). However, the ALJ's RFC included work-related functional limitations that align with Dr. Liu's findings of mild to moderate limitations. (Tr. 140-52). The ALJ found plaintiff could perform light work but that she could only occasionally climb ramps and stairs, balance, kneel, crouch, and crawl, could never climb ladders, ropes, or scaffolds, and could frequently stoop. (Tr. 140-52). This is consistent with Dr. Liu's findings on examination that plaintiff had a normal gait, did not require an assistive device, needed no help getting on and off the examination table, and was able to rise from a chair without difficulty; but that she had moderate difficulty with toe walking and was able to squat only 25 percent. (Tr. 140-52). The ALJ's finding that plaintiff could frequently operate hand controls or handle items bilaterally, is consistent with exam findings showing only "mild" carpal tunnel syndrome with generally full strength in the upper extremities, intact hand and finger dexterity, and 5/5 grip strength bilaterally. (Tr. 149, citing Tr. 149, 197-98, 423, 437, 901, 979).

Although the ALJ's RFC includes additional limitations restricting work at unprotected heights, occasionally working with moving mechanical parts or operating a motor vehicle, and limited to moderate noise, occasional exposure to extreme cold and vibration, and no exposure to bright lighting, these limitations account for subjective testimony and were not based on lay judgment. Plaintiff testified her pain was worse in cold weather and she had symptoms from severe headaches. (Tr. 147-52). *McLeod v. Berryhill,* Case No. 1:17-CV-00262, 2018 WL 4327814, at *3

(W.D.N.Y. Sept. 11, 2018) (consultative examiner's opinion supported RFC finding, noting that "'the fact that the ALJ's RFC assessment did not perfectly match [an examining medical source]'s opinion, and was in fact more restrictive than that opinion, is not grounds for remand.'") (quoting *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)).

The ALJ's RFC is clearly supported by substantial evidence, even if it does not correspond to any one particular medical opinion. *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 349 (W.D.N.Y. 2018) (where the ALJ discussed four separate opinions relating to plaintiff's work-related limitations, there was not a complete absence of opinion evidence relating to plaintiff's work-related limitations). The ALJ properly considered the record as a whole and resolved inconsistencies to determine the plaintiff's RFC.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 8) is

**GRANTED**.

Dated:  April 23, 2021  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge